UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PLC TRENCHING CO., LLC,<br><br>              Plaintiff,<br><br>vs.<br><br>IM SERVICES GROUP, LLC,<br><br>              Defendant. | Case No. 1:20-cv-00602-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court are Plaintiff's motion for preliminary injunction and Defendant's motion to dismiss. (Dkt. 1, 27.)[1] The motions are fully briefed and at issue. The Court conducted a hearing on June 24, 2021. After careful consideration of the record, the parties' briefing and supporting materials, and oral argument, the Court will deny the motion for preliminary injunction, and grant without prejudice the motion to dismiss.

## BACKGROUND

This is a patent infringement action brought by PLC Trenching Company, LLC ("PLC-T") against IM Services Group, LLC ("IMSG"). (Dkt. 25.) The Amended

---

[1] The Court previously ruled on Defendant's motion to seal, which involved materials filed in support of Defendant's opposition to Plaintiff's motion for preliminary injunction. (Dkt. 43.) None of the materials filed under seal are contained in this memorandum decision and order. Accordingly, the memorandum decision and order is not filed under seal or redacted.

Complaint asserts two claims of patent infringement under 35 U.S.C. Section 271, one claim for each of the PLC-T patents listed below:

1)   U.S. Patent No. 6,981,342 titled "Screening Laying Box" (the '342 Patent).



*'342 Patent, Fig. 1 and Fig. 2*



*'342 Patent, Fig. 3*

2)   U.S. Patent No. 7,310,896 titled "Mechanized Unit for Protectively Encasing a Utility in a Trench With Processed Excavated Trench Material" (the '896 Patent).



*'896 Patent, Fig. 1 and Fig. 3*

*Fig. 2*



*'896 Patent, Fig. 2*

The Amended Complaint seeks injunctive relief, general damages, costs, expenses, pre-judgment and post-judgment interest, enhanced damages for willful infringement under 35 U.S.C. Section 284, and attorney fees under 35 U.S.C. Section 285. (Dkt. 25.)

The two patents –'342 and '896 (collectively "the Patents") – are designs for "encasement devices," which are pieces of equipment that attach to large trenching machines used to install underground utility lines.[2] PLC-T contends the encasement devices are unique from other trenching systems, in that they utilize an in-trench screen or screens with a plow to push native soil back into the trench after the utility line is placed in the trench. The devices, PLC-T asserts, allow PLC-T to utilize an innovative "single-pass" or "one-pass" process for installing underground lines that is far superior to others in the industry. (Dkt. 25 at 4-6.)

---

[2] The Amended Complaint uses varying iterations of two terms when referring to the pieces of equipment that are depicted in the Patents: 1) "encasement device" and "encasement system," and 2) "screening laying box system" and "laying box technology." (Dkt. 25 at 5-14.) Consequently, the use of these terms will vary throughout this Order. The Court will apply the terms consistent with how they are used in the Amended Complaint.

MEMORANDUM DECISION AND ORDER - 3

Generally speaking, the two patented devices are similar to one another in that they both utilize: 1) a "screening member" and 2) "a plow." The two devices differ in the design of the "screening member." Patent '342 utilizes at least one screen with a plurality of openings that allows excavated material swept by the plow onto the screen or screens to pass through the openings for deposit into the trench. (Dkt. 25, Ex. A) (emphasis added.) In contrast, Patent '896 utilizes a single layer screen with a plurality of sections of openings of progressively increasing size relative to the front of the unit. (Dkt. 25, Ex. B) (emphasis added.)

PLC-T has been in the business of providing full-service underground utility installation for commercial wind and solar markets since 2002. (Dkt. 25 at ¶ 7.) IMSG entered the market to provide underground installation services at renewable energy facilities, e.g., wind and solar farms, in 2020. (Dkt. 25 at ¶ 24); (Dkt. 35-3, Dec. O'Connor at ¶ 5.) PLC-T claims that IMSG utilizes trenching machines similar to that owned by PLC-T and has marketed itself as using the one-pass system in its services. As such, PLC-T contends that the two are direct competitors and have been offering competing bids for work on the same lucrative projects. (Dkt. 25 at ¶ 25.)

In September of 2020, PLC-T and IMSG were both sub-contractors working on the Wheatridge Renewable Energy Facility II ("Wheatridge Project") in Oregon. During their work on the Wheatridge Project, PLC-T alleges it discovered that IMSG's trenching machine (the "Accused Product") was using PLC-T's patented technology - comprised of an in-trench screening member with openings of varying sizes and a plow for sweeping excavated material onto the screening member. (Dkt. 25 at ¶¶ 27-28.) PLC-T alleges

Marais, S.A., a French company, manufactured the Accused Product. IMSG first leased and then later purchased the Accused Product from Marais.

PLC-T alleges IMSG knew it had infringed on PLC-T's patents and continues to do so by using the Accused Product on other utility installation projects. (Dkt. 25 at ¶¶ 32-41.) Further, PLC-T alleges IMSG has submitted competing bids against it on projects at lower than current market prices and that PLC-T recently lost its bid for a project at the Western Spirit Wind Project in New Mexico. The contract was awarded to IMSG who submitted a lower bid and began work on the project in November of 2020, using the Accused Product.

On December 31, 2020, PLC-T filed a complaint and the motion for preliminary injunction presently before the Court. (Dkt. 1, 2.) PLC-T filed an Amended Complaint on March 18, 2021. (Dkt. 25.) IMSG denies the claims and filed the pending motion to dismiss claims for past damages for failure to mark and willful infringement claims on April 1, 2021. (Dkt. 27.) The Court heard oral argument after both motions were fully briefed. After setting forth the standards of law applicable to each motion, the Court will discuss each motion in turn.

## STANDARDS OF LAW

1. <u>**Motion for Preliminary Injunction**</u>

To obtain a preliminary injunction, generally a party must show "that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Luminara Worldwide, LLC v. Liown Electronics Co. Ltd.*, 814

F.3d 1343, 1352 (Fed. Cir. 2016) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

In a patent case, to establish a likelihood of success on the merits, a patentee must show that, "in light of the presumptions and burdens that will inhere at trial on the merits," it will likely prove infringement of the asserted claims and that its infringement claim will likely withstand the alleged infringer's challenges to patent validity and enforceability. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001); *see also Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1364 (Fed. Cir. 2017). If the accused infringer raises a substantial question concerning either infringement or validity that that patentee cannot overcome, the preliminary injunction should not issue. *Amazon.com*, 239 F.3d at 1350. Furthermore, a patentee must establish a causal nexus between the infringement and the alleged harm. *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1324 (Fed. Cir. 2012).

2.    **Motion to Dismiss**

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," sufficient to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To defeat a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor. *Id*. However, the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id*. (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

### 1.  <u>Motion for Preliminary Injunction</u>

PLC-T moves for a preliminary injunction seeking to enjoin IMSG from continued use of the Accused Product in the United States. (Dkt. 1.) PLC-T argues it is likely to succeed on the merits of its patent infringement claims and that it will incur irreparable harm in the absence of a preliminary injunction. IMSG disagrees, arguing substantial questions have been raised concerning 1) whether PLC-T can prove the alleged infringement and 2) whether the patents are valid. (Dkt. 44.)

### A.  Likelihood of Success on the Merits

#### i.  Infringement

"A determination of patent infringement requires a two-step analysis." *BlackBerry Ltd. v. Facebook, Inc.*, 487 F.Supp.3d 870, 878 (C.D. Cal. 2019) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995)). The first step is to construe the claims to determine the scope and meaning of what is allegedly infringed. The second step compares "the properly construed claims to the accused product to determine whether each of the claim limitations is met, either literally or under the

doctrine of equivalents." *Id*. The first step is a question of law and the second step is a

question of fact. *Id.*

The doctrine of equivalents provides that "a product or process that does not

literally infringe upon the express terms of a patent claim may nonetheless be found to

infringe if there is 'equivalence' between the elements of the accused product or process

and the claimed elements of the patented invention." *Warner–Jenkinson Co. v. Hilton*

*Davis Chem. Co*., 520 U.S. 17, 21 (1997) (citing *Graver Tank & Mfg. Co. v. Linde Air*

*Prods. Co*., 339 U.S. 605, 609 (1950)). The question presented with the doctrine of

equivalents is "whether the accused device performs substantially the same function in

substantially the same way to obtain substantially the same result as the claim limitation."

*VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1322 (Fed. Cir. 2014).

Here, PLC-T claims patent infringement both directly and under the doctrine of

equivalents. (Dkt. 25 at ¶¶ 47, 59.) PLC-T alleges IMSG's use of the Accused Product

with a substantially similar encasement device infringes on certain of the claims made in

each of the Patent applications. (Dkt. 1 at 6-9.) For the '342 Patent, PLC-T alleges

infringement of claim 1 (screen with a plurality of openings and plow); claim 3

(screening member is mounted with a downward slope); claims 4 & 7 (device includes a

"shaker unit" and "vertical plate" on each side); and claim 8 (device includes a means for

adjusting the height of the plow relative to the top of the trench). (Dkt. 1 at 6-8.) For the

'896 Patent, PLC-T alleges infringement of claim 1 (plow and screening member with a

plurality of openings of progressively increasing in size relative to the front of the unit).

(Dkt. 1 at 8-9.)

IMSG argues PLC-T has failed to establish a likelihood of proving direct infringement because: 1) the Accused Product does not utilize a screening member "having a plurality of sections of openings of progressively increasing size" as required by all of the claims of the '896 Patent and 2) the Accused Product does not have a "shaker unit" as required by claim 4 of the '342 Patent and claims 4 and 5 of the '896 Patent. (Dkt. 44 at 21-23.) Further, IMSG asserts there is no infringement under the doctrine of equivalents, arguing the disclosure-dedication doctrine precludes infringement under the doctrine of equivalents because the Patents disclose a "shaking or vibrating device can be utilized," but claim only a "shaker unit." (Dkt. 44 at 23.)[3]

On this motion, the Court finds PLC-T has shown a likelihood of proving infringement on at least claim 1 of both Patents.[4] At step one of the infringement analysis, construing the scope and meaning of what is allegedly being infringed, the Court finds that claim 1 of both Patent applications describe an encasement device that utilizes an in-trench screen or screens with a plurality of openings and a plow for sweeping excavated material back over the screen or screens and into the trench as the unit moves. (Dkt. 25, Ex. A, '342 Patent); (Dkt. 25, Ex. B, '896 Patent).

---

[3] IMSG's arguments involving the "shaker unit" apply to claims other than claim 1 of the Patents. Because the Court's findings concerning PLC-T's likelihood of proving infringement on this motion are limited to claim 1 of the Patents, the Court will not address the arguments pertinent to the other claims.

[4] This ruling is limited to the standard applicable to this motion for preliminary injunction; the Court makes no determination regarding the merits of PLC-T's infringement claims.

'342 Patent claim 1 states:

What is claimed is:

1. A movable unit for screening excavated material to protectively cover or encase one or more utilities in an excavated trench, comprising:

a screening member mounted to the unit and located within the trench above the one or more utilities in the trench;

a plow for sweeping excavated material lying along at least one side of the trench onto said screening member, wherein said screening member has at least one screen with a plurality of openings with the excavated material passing through the openings of said at least one screen to deposit onto the utility or utilities installed in the trench as the unit moves.

'896 Patent claim 1 provides:

I claim:

1. A movable unit for screening excavated material to protectively cover or encase one or more utilities in an excavated trench in the ground comprising:

a screening member of a single layer screen mounted to the unit so as to be located below the ground surface within the trench and above the one or more utilities in the trench, said screening member having a plurality of sections of openings of progressively increasing size relative to the front of the unit;

a plow for sweeping excavated material lying along at least one side of the excavated trench onto said screening member, wherein the excavated material swept onto said screening member passes through the sections of openings of progressively increasing size to

> deposit layers of particles of the excavated
> material of progressively increasing size onto
> the utility or utilities installed in the trench as
> the unit moves.

At step two, comparing the claims to the Accused Product, the Court finds the

photographs taken at the Wheatridge Project show that IMSG's trenching machine

utilizes an encasement device made up of an in-trench screen with a plurality of openings

and a plow. (Dkt. 25 at 11-13.)

 

*Photographs 6 and 7 – IMSG's Trenching System with Encasement Device*



*Photograph 8 – IMSG's Trenching System with Encasement
Device*

MEMORANDUM DECISION AND ORDER - 11

The Wheatridge Project photographs illustrate that IMSG's trenching machine employs an encasement device that meets the limitations in claim 1 of the Patents, either literally or under the doctrine of equivalents. Specifically, the photographs show that IMSG's trenching machine utilizes a movable, in-trench screening device with a plurality of openings, and a plow for sweeping excavated material onto the screening device and back into the trench. While IMSG disputes the evidence and raises arguments to the contrary, the Court finds that PLC-T has demonstrated a likelihood of proving that IMSG's trenching machine is at least substantially similar to PLC-T's patented devices in that it utilizes an in-trench screen or screens and a plow; and that it performs substantially the same function, in substantially the same way, to obtain substantially the same results as the devices described in claim 1 of the '396 Patent and the '896 Patent.[5]

### ii.   Validity of the Patents

Having established a likelihood of success on the merits with regard to infringement on claim 1 of the Patents, PLC-T must now demonstrate that the Patent

---

[5] IMSG relies on the Declaration of Jim O'Connor to dispute PLC-T's contention that IMSG's trenching machine utilizes a screen with progressively increasing hole sizes. (Dkt. 35-3, Ex. 3.) The Court finds otherwise. Claim 1 of the '342 Patent does not designate that the screen have openings of progressively increasing size. (Dkt. 25-1, Ex. A.) Thus, the O'Connor declaration fails to rebut PLC-T's showing of an infringement of claim 1 of the '342 Patent in that regard. However, Claim 1 of the '896 Patent does describe the screening member as having a plurality of sections of openings with progressively increasing size relative to the front of the unit. (Dkt. 25-2, Ex. B.) To that end, the O'Connor Declaration, at best, gives rise to a factual dispute concerning whether the screen of the Accused Project used openings of progressively increasing size relative to the front. *See e.g.*, (Dkt. 38-2, Dec. Critelli.) It does not, however, overcome PLC-T's showing on this motion that it is likely to prove infringement on claim 1 of the Patents.

claims are likely to withstand the validity challenge presented by IMSG. *Amazon.com*, 239 F.3d at 1350-51.

Here, PLC-T argues the Patents are presumed valid and that IMSG has failed to make a substantial showing of the invalidity of the Patents. IMSG contends that it has established substantial questions concerning the invalidity of the Patents in two respects. First, that the devices described in the Patents were derived or appropriated from Marais. Second, that the Patents are invalid as obvious. (Dkt. 44.) PLC-T disagrees, arguing its employee, Michael Lopata, was the originator and inventor of the Patents and that both Patents are nonobvious.

An issued patent comes with a statutory presumption of validity under 35 U.S.C. Section 282. *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009). Because of this presumption, an alleged infringer who responds to the preliminary injunction motion by "launching an attack on the validity of the patent" bears the initial burden to come forward with evidence of invalidity. *Id.* However, the burden on the accused infringer to show a substantial question of invalidity is lower than what is required to prove invalidity at trial. *Altana Pharma AG v. Teva Pharms. USA, Inc.*, 566 F.3d 999, 1006 (Fed. Cir. 2009) ("The showing of a substantial question as to invalidity thus requires less proof than the clear and convincing showing necessary at trial."); *Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1335 (Fed. Cir. 2006). At the preliminary injunction stage, the court "does not resolve the validity question, but rather must... make an assessment of the persuasiveness of the challenger's evidence, recognizing that it is doing so without all evidence that may come out at trial." *Titan Tire*,

MEMORANDUM DECISION AND ORDER - 13

566 F.3d at 1377 (quoting *New England Braiding Co. v. A.W. Chesterton Co.*, 970 F.2d 878, 882–83 (Fed. Cir. 1992)).

If the accused infringer presents evidence of invalidity, the patentee must then persuade the court that, despite the challenge presented to validity, the patentee nevertheless is likely to succeed at trial on the validity issue. *Id*. "The patentee need not establish the validity of a patent beyond question. The patentee must, however, present a clear case supporting the validity of the patent in suit." *Amazon.com*, 239 F.3d at 1359.

Here, IMSG has come forward with evidence sufficient to raise substantial questions about the validity of the Patents. First, the materials submitted by IMSG describing Mr. Lopata's 2000 visit to Marais' facility in France and PLC-T's meetings with Marais, while not conclusive, suggest the potential that Mr. Lopata or PLC-T discovered the devices depicted in the Patent applications from Marais. (Dkt. 36, 44.) Likewise, as to obviousness, IMSG has submitted an expert report from Paul Beal and other evidence demonstrating that PLC-T's patented devices could have been derived from an obvious combination or extension of other patented devices or prior art. (Dkt. 35-6 through 35-29); (Dkt. 44.) The burden thus shifts to PLC-T to persuade the Court that it is likely to succeed on the validity issue at trial.

PLC-T responds to IMSG's contention that it derived the devices from Marais with a Declaration from Mr. Lopata, the inventor named on the Patent applications, vehemently disagreeing with IMSG's contention that he discovered the device from Marais. Mr. Lopata attests that he is the "original sole inventor of the inventions claimed in the Patents." (Dkt. 38-1, Dec. Lopata at ¶ 12.) This evidence is sufficient at this stage

of the litigation to "present a clear case supporting the validity" of claim 1 of the Patents, and to rebut IMSG's contention that the Patents were derived from Marais. *Amazon.com*, 239 F.3d at 1359.

IMSG's evidence concerning Mr. Lopata's visit in 2000 to the Marais facility in France and the meetings between PLC-T and Marais is not overly persuasive or compelling. (Dkt. 36, 44.) The declarations and materials contain no direct evidence by anyone with personal knowledge stating that Mr. Lopata or other representatives of PLC-T were actually shown the Marais' designs and technology, or that they met with the individuals who designed Marais' technology. *See e.g.*, (Dkt. 44-2, Dec. Jean-Claude Robin) (stating it was his "intention and expectation" that Mr. Lopata be shown Marais' technology during his March 2000).

Even if IMSG's materials offer some circumstantial evidence that Mr. Lopata or others at PLC-T had prior knowledge of Marais' technology, Mr. Lopata's Declaration emphatically denies that he ever met the Marais designers or saw the technology and designs as contended in IMSG's materials. (Dkt. 38-1, Dec. Lopata.) This evidence, coupled with the fact that issued patents are presumed to be valid, is sufficient to overcome IMSG's challenge to the validity of claim 1 of the Patents based on derivation or appropriation, for purposes of this motion.

As to obviousness, however, PLC-T has not persuaded the Court that it is likely to succeed at trial in showing, in relation to claim 1, that the Patents were not obvious. A claim is invalid for obviousness "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before

the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103.

In response to IMSG's obviousness challenge here, PLC-T submitted the Declaration of David Critelli, Chief Executive Officer of PLC-T. (Dkt. 38-2.) Mr. Critelli relies on his personal knowledge and expertise in the trenching business to dispute the conclusions contained in the expert report of Paul Beal submitted by IMSG. Mr. Critelli asserts that Mr. Beal failed to consider the fact that PLC-T's one-pass system is unique and innovative technology that has provided a novel solution to historical problems in the industry and PLC-T's extensive efforts to legally protect its patented encasement devices. (Dkt. 38-2.) Even if Mr. Critelli's assertions in this regard are true, Mr. Critelli does not address Mr. Beal's opinions about obviousness related to prior art.

Instead, PLC-T contests IMSG's assertions that its patents were combinations or extensions of other patents or prior art in its reply brief. (Dkt. 38.)[6] In particular, PLC-T argues IMSG's illustration purporting to combine the Rivard '078 and Crook '969 patents depicts an unworkable device. (Dkt. 38.) PLC-T also notes that some of the prior art relied on by IMSG was considered by the Patent Office when it approved PLC-T's patents. (Dkt. 38 at 5, n. 1.) Further, PLC-T disputes the conclusions in and the admissibility of Mr. Beal's Declaration and opinions.

---

[6] IMSG asserts that PLC-T's "attorney arguments" are improper and an insufficient response to refute IMSG's evidence of obviousness. (Dkt. 40.) For purposes of this motion, the Court has considered PLC-T's arguments made in its reply brief in making its determination stated herein.

Having carefully reviewed the record and the parties' arguments, the Court finds PLC-T has not shown it is likely to succeed at trial on the validity issue. PLC-T's disagreement with IMSG's evidence of obviousness based on prior art, fails to "present a clear case supporting the validity of the patent in suit." *Amazon.com*, 239 F.3d at 1359. Mr. Beal's expert report raises serious challenges to the validity of claim 1 of the Patents based on prior art. Recognizing that not all of the evidence that may be offered at trial has been presented, the Court has evaluated the materials provided by the parties and concludes that IMSG has established a substantial question going to the validity of claim 1 of the Patents based on prior art which PLC-T has not overcome. While PLC-T ultimately may be able to prove the Patents are valid, the Court finds on this motion that PLC-T has failed to demonstrate that it is likely to succeed at trial on the validity issue. Even if PLC-T had persuaded the Court that it is likely to succeed on the merits of its claims, the motion for preliminary injunction would still be denied because, as explained below, PLC-T has failed to show irreparable harm.

**B.    Irreparable Harm**

PLC-T asserts it will suffer irreparable harm in the absence of a preliminary injunction, including the loss of: exclusivity rights, competitive advantage, reputation, business opportunities, and goodwill. Further, PLC-T argues there is a causal nexus between IMSG's infringement and irreparable harm, because PLC-T's one-pass system is innovative and unique to PLC-T, and gives PLC-T a significant competitive advantage in the industry. (Dkt. 1-1 at 18) (pointing to declaration from one of PLC-T's largest customers, Richard Rohde, commenting on the "remarkable features" of PLC-T's

operations). Absent a preliminary injunction, PLC-T argues that IMSG will continue to use PLC-T's patented technology and market itself as another provider of one-pass trenching services, causing irreparable harm to PLC-T.

IMSG contends the harms alleged by PLC-T are speculative and can all be remedied with monetary relief, if PLC-T prevails in this action. In particular, IMSG argues PLC-T has offered no evidence of potential lost sales or market shares and that PLC-T waited four months after discovering IMSG's use of the Accused Product before filing this lawsuit. Further, IMSG represents that it is no longer using a "laybox with a screen on the Western Spirit Project." (Dkt. 35 at 35.)

The Court finds PLC-T has failed to show it is likely to suffer irreparable harm in the absence of preliminary relief. *Luminara*, 814 F.3d at 1352. The loss of exclusivity rights may be considered but does not alone justify an injunction. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011). Here, PLC-T's asserted right to exclusive use of the patents does not demonstrate a likelihood of irreparable harm given IMSG's challenge to the validity of the patents discussed above.

The alleged harms relating to the loss of competition, market share, and business opportunities are also not irreparable. There is no dispute that the parties are direct competitors. However, lost contract bids, infringement on a market share, and other similar business losses are quantifiable and recoverable as monetary damages. Moreover, PLC-T has not provided any evidence of its market share or decreases in its market share correlating to IMSG's alleged infringement that could support a causal nexus between the alleged infringement and the harm suffered.

PLC-T also has not established that the alleged losses to its reputation and goodwill are likely to occur or are irreparable. PLC-T argues that it has a "hard-earned reputation as an innovator" and exclusive user of the one-pass system that is the embodiment of PLC-T's business model. (Dkt. 1, 38.) PLC-T asserts that IMSG has marketed itself as offering the same technology as PLC-T for a competitive advantage in bidding on projects. (Dkt. 1 at 16-17.) However, PLC-T has not argued that its reputation or goodwill has been or will be diminished because IMSG provides inferior services while holding itself out as offering the same services as PLC-T. Rather, PLC-T's arguments revert back to the alleged harms discussed above relating to the loss of exclusivity rights, competitive advantage, and business opportunities, which are not irreparable if PLC-T prevails in this action.

C.   **Balance of Hardships and Public Interest**

The Court finds the balance of the hardships and public interest considerations are equally compelling for both parties under the circumstances in this case. Both parties have legitimate business interests in continuing to compete for bids on projects and provide their underground installation services, even though they may be situated differently in terms of their length of time in the industry. Similarly, the public interest of incentivizing inventors to develop new ideas and technologies is favored both by enforcing the rights of valid patentholders as well as investigating potential invalid patents. Therefore, these factors evenly balance and do not weigh either in favor or against a preliminary injunction.

MEMORANDUM DECISION AND ORDER - 19

**D.    Conclusion**

For the reasons explained above, the Court finds PLC-T has failed to demonstrate a likelihood of success on the merits. Further, PLC-T has not demonstrated that it is likely to suffer irreparable harm in the absence of preliminary relief. Accordingly, PLC-T's motion for preliminary injunction will be denied.

**2.    Motion to Dismiss**

IMSG moves for dismissal of PLC-T's claims for 1) pre-suit damages under 35 U.S.C. Section 287(a), and 2) willful infringement damages under 35 U.S.C. Section 284. (Dkt. 27.) PLC-T responds by contending that requests for damages in a prayer for relief are not "claims" subject to dismissal under Rule 12(b)(6), and, further, that the allegations in the Amended Complaint are sufficiently plead to allow PLC-T to pursue pre-suit and willful infringement damages. (Dkt. 33.)

**A.    Pre-Suit Damages Under 35 U.S.C. § 287(a)**

IMSG argues PLC-T failed to plead pre-suit compliance with Section 287(a)'s marking and notice provisions and, therefore, PLC-T is limited to damages occurring after the filing of this infringement action.

Under the Patent Act, to recover damages for infringing activities prior to the filing of the complaint, a patentee must comply with 35 U.S.C. Section 287(a) which provides, in relevant part:

> Patentees…making, offering for sale, or selling within the United States any patented article…may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or by fixing thereon the word "patent" or the abbreviation "pat." together with an address of a posting on

the Internet, accessible to the public…that associates the patented article
with the number of the patent, or when, from the character of the article,
this can not be done, by fixing to it, or to the package wherein one or more
of them is contained, a label containing a like notice. In the event of failure
so to mark, no damages shall be recovered by the patentee in any action for
infringement, except on proof that the infringer was notified of the
infringement and continued to infringe thereafter, in which event damages
may be recovered only for infringement occurring after such notice. Filing
of an action for infringement shall constitute such notice.

Thus, "[a] patentee who makes or sells patented articles can satisfy the notice
requirement of [Section] 287 either by providing constructive notice—i.e., marking its
products—or by providing actual notice to an alleged infringer." *Artic Cat Inc. v.
Bombardier Rec. Products Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020) (citing *Gart v.
Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001)).

Here, PLC-T has not plead compliance with Section 287(a)'s marking or notice
requirements. The Amended Complaint contains no allegation that PLC-T marked its
devices or otherwise provided IMSG with actual notice of infringement prior to this
lawsuit being filed. (Dkt. 25.) That is to say, the Amended Complaint does not allege
that: 1) PLC-T marked its patented devices in the manner provided for in Section 287(a),
or 2) PLC-T notified IMSG of its infringement and IMSG continued to infringe
thereafter. 35 U.S.C. Section 287(a). PLC-T is therefore limited to recovering post-suit
damages. *See Radware, Ltd. v. F5 Networks, Inc.*, 147 F.Supp.3d 974, 1009 (N.D. Cal.
2015) (Section 287(a) "limits the extent to which damages may be recovered where
products covered by a U.S. patent are sold without the notice defined in the statute.")
(quoting *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1220 (Fed. Cir.
2002)).

PLC-T argues Paragraph 37 of the Amended Complaint satisfies Section 287(a)'s notice requirement by alleging notice based on the filing of this action for patent infringement. (Dkt. 33.) PLC-T maintains that "the quantum of recoverable damages will be dependent upon a finding of whether Defendant was 'notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice.'" (Dkt. 33 at 12.) The Court disagrees.

Paragraph 37 provides: "Notwithstanding its knowing infringement prior to the time this action was commenced, the filing of this action constitutes notice of infringement to IMSG as provided by 35 U.S.C. [Section] 287(a)." The generalized allegation that IMSG knew of the patents or the alleged infringement prior to the commencement of this litigation does not satisfy Section 287(a)'s notice requirement for purposes of recovering pre-suit damages.

The Section 287(a) inquiry focuses on the actions of the patentee rather than the knowledge of the infringer. *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994). Actual notice of the infringement, which is necessary for recovery of pre-suit damages in the absence of marking on a patented device, requires affirmative communication of a specific charge of infringement by a specific accused product or device. *Artic Cat*, 950 F.3d at 864 (quoting *Amsted Indus.*, 24 F.3d at 187 ("Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device.")). Constructive notice or knowledge of merely a patent's existence or ownership is not sufficient. *Id.* Thus, the

allegation in Paragraph 37 of a "knowing infringement prior to the time this action was commenced" is insufficient to plead pre-suit compliance with Section 287(a).

Accordingly, the motion to dismiss will be granted without prejudice as to pre-suit damages recoverable under 35 U.S.C. Section 287(a). In the event evidence is discovered that establishes pre-suit compliance with Section 287(a), PLC-T may seek leave to amend the complaint to conform to the evidence.

## B.    Willful Infringement Under 35 U.S.C. § 284.

"Section 284 of the Patent Act provides that, in a case of infringement, courts 'may increase the damages up to three times the amount found or assessed.'" *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S.Ct. 1923, 1928 (2016) (quoting 35 U.S.C. § 284). An award of enhanced damages under 35 U.S.C. Section 284 requires a showing of willful infringement. *Potter Voice Tech. v. Apple Inc.*, 24 F.Supp.3d 882, 886 (N.D. Cal. Jan. 6, 2014). "District courts enjoy discretion in deciding whether to award enhanced damages, and in what amount." *Halo*, 136 S.Ct. at 1932. "[A] patent infringement plaintiff does not have to prove willfulness at the pleading stage, although they should allege more than a one-sentence prayer for willfulness relief ..." *Straight Path IP Group v. Apple Inc.*, 2017 WL 3967864, at *4 (N.D. Cal. Sept. 9, 2017) (quotation omitted).

IMSG moves for dismissal of PLC-T's claims seeking enhanced damages for willful infringement. IMSG argues the Amended Complaint fails to plausibly allege that: 1) IMSG had pre-suit knowledge of the patent, and 2) IMSG engaged in egregious conduct as required to show willfulness under Section 284. (Dkt. 44.) PLC-T maintains

the allegations in the Amended Complaint are sufficient for PLC-T to pursue enhanced damages for willful infringement. (Dkt. 33.)

###### i.    Pre-Suit Knowledge

Knowledge of the patent alleged to be willfully infringed is a prerequisite to enhanced damages. *WBIP, LLC. v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016). However, knowledge of a patent alone does not equate to willfulness. *Radware*, 147 F.Supp.3d at 1011 (quoting *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 585 F.Supp.2d 636, 644 (D. Del. 2008)). The infringer acts willfully when it was "aware of the asserted patent, but nonetheless acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Potter*, 24 F.Supp.3d at 887; *see also NetFuel, Inc. v. Cisco Sys. Inc.*, 2018 WL 4510737, at * 2 (N.D. Cal. Sept. 18, 2018) ("To willfully infringe a patent, the patent must exist and one must have knowledge of it."). Thus, to state a claim for willful infringement, a patentee must allege that the accused infringer had knowledge of the patent prior to filing the lawsuit. *Illumina v. BGI Genomics Co., Ltd.*, 2020 WL 571030, at *6 (N.D. Cal. Feb. 5, 2020); *see also Fluidigm Corp. v. IONpath, Inc.*, 2020 WL 408988, at *5 (N.D. Cal. Jan. 24, 2020) (citing cases).

Here, the Court finds the allegations in the Amended Complaint are insufficient to plead a plausible claim that IMSG knew of the Patents and its alleged infringement of the Patents prior to the filing of this lawsuit. The Amended Complaint broadly asserts that IMSG may have known PLC-T owned "patented laying box technologies" prior to this lawsuit. (Dkt. 25 at ¶¶ 32, 33, 34.) However, there are no facts alleged that IMSG had

knowledge of the two patents at issue here - the '342 Patent and the '896 Patent – or of its infringement as required to establish willfulness.

The general references to PLC-T's patented "laying box technologies" in Paragraphs 32 and 34 are insufficient to demonstrate IMSG knew of the specific patents at issue here. (Dkt. 25 at ¶¶ 32, 34.) Paragraphs 35 and 36 contain only conclusory statements couched as factual allegations that IMSG knew of the Patents and its infringement, which the Court is not bound to accept as true. *Iqbal*, 556 U.S. at 678.

Even taking these allegations in the Amended Complaint as true and drawing all inferences in PLC-T's favor, PLC-T has shown only a possibility that IMSG knew PLC-T owned patents relating to laying box technologies. There are no facts alleged to support PLC-T's claim that IMSG had knowledge of the '342 Patent and '896 Patent before the filing of this lawsuit or its infringement of the Patents. Thus, the Amended Complaint fails to state a plausible claim for willful infringement. *Illumina*, 2020 WL 571030, at *6; *see also Fluidigm Corp.*, 2020 WL 408988, at *5 (citing cases).

### ii.    Egregious Conduct

Enhanced damages for willful infringement are "generally reserved for egregious cases of culpable behavior" involving conduct that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or — indeed — characteristic of a pirate." *Halo*, 136 S.Ct. at 1931-32. In assessing the egregiousness of an actor's behavior, what matters is "the actor's subjective state of mind at the time of the challenged conduct, not his [or her] objective reasonableness." *WiNet Labs LLC v. Apple Inc.*, 2020 WL 409012, at *5 (N.D. Cal. Jan. 24, 2020) (quoting *Finjan, Inc. v. Cisco Sys. Inc.*, 2017 WL

2462423, at *3 (N.D. Cal. June 7, 2017)); *see also Halo*, 136 S.Ct. at 1933. Knowledge remains a key factor in this determination. *Halo*, 136 S.Ct. at 1933. "Whether an act is willful is by definition a question of the actor's intent, the answer to which must be inferred from all the circumstances." *Potter*, 24 F.Supp.3d at 887. "Determining willfulness is a highly fact-based endeavor." *NetFuel*, 2018 WL 4510737, at *2.

The Amended Complaint fails to allege IMSG engaged in egregious conduct. At best, the allegations in the Amended Complaint demonstrate that IMSG may have generally known PLC-T possessed patented laying box technologies, that IMSG infringed on PLC-T laying box technology patents, and that IMSG engaged in sharp, competitive business practices. This is not enough to support a claim for pre-suit enhanced damages, however. *Halo*, 136 S.Ct at 1932 (Enhanced damages are generally reserved for "egregious cases of misconduct beyond typical infringement.").

Even taking the allegations as true and drawing inferences in favor of PLC-T, the facts alleged in the Amended Complaint simply do not rise to the level of "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or indeed – characteristic of a pirate." *Halo*, 136 S.Ct. at 1932. The facts asserted do not demonstrate that IMSG's actions prior to the filing of the lawsuit were anything other than what is found to have occurred in a typical infringement case. *Id.* There are no allegations

tending to show, or from which it can be inferred, that IMSG willfully and egregiously infringed on PLC-T's Patents prior to the filing of the lawsuit.[7]

For these reasons, the Court will grant, without prejudice, IMSG's motion to dismiss the claim for pre-suit enhanced damages pursuant to Section 284. Should evidence of pre-suit egregious conduct by IMSG come to light, PLC-T may move for leave to amend.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED as follows:

1)      Plaintiff's Motion for Preliminary Injunction (Dkt. 1) is **DENIED**.

2)      Defendant's Motion to Dismiss (Dkt. 27) is **GRANTED** without prejudice.

3)      The parties are directed to meet and confer as directed in Local Patent Rules 1.2 and 2.1, and to submit a joint litigation plan and joint discovery plan on or before **August 17, 2021**. The parties are encouraged to use the Court's patent case litigation plan form and discovery plan form that may be found on the District Court's website, www.id.uscourts.gov, under Civil Forms.[8]

---

[7] The Court makes no determination concerning any post-suit willful conduct by IMSG raised in PLC-T's opposition brief.

[8] The URL address to access the Court's forms may be found at: http://id.uscourts.gov/district/forms_fees_rules/Civil_Forms.cfm.

MEMORANDUM DECISION AND ORDER - 27

4)      An initial telephonic scheduling conference will be held on **August 31, 2021 at 10:30 a.m. (MT)** for the purpose of confirming the deadlines proposed by the parties in the joint litigation plan and joint discovery plan. The parties are to call the Court's AT&T conference line, 1-888-273-3658, and enter Access Code 5475731, and Security Code 5637.

DATED: July 29, 2021

Honorable Candy W. Dale
Chief United States Magistrate Judge